915 So.2d 1 (2005)
Wilford L. MITCHELL a/k/a Wilfred L. Mitchell, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00458-COA.
Court of Appeals of Mississippi.
June 7, 2005.
Rehearing Denied October 25, 2005.
*5 Bartley Marshall Adams, William R. Fortier, Ripley, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Wilfred L. Mitchell was convicted by a Marshall County jury of three counts of aggravated assault. The trial judge sentenced him to serve fifteen years on each count in the custody of the Mississippi Department of Corrections, with the sentences running consecutively. Aggrieved, Mitchell now appeals and alleges (1) that he was prejudiced by ineffective assistance of counsel, (2) that his waiver of arraignment and entry of plea were insufficient, (3) that the indictment was defective and insufficient, (4) that his sixth amendment right to a speedy trial was violated, (5) that the trial judge erred in granting certain jury instructions, (6) that the trial judge erred in allowing the State to present evidence of an additional crime during rebuttal testimony, (7) that the verdict was against the overwhelming weight of the evidence, and (8) that his sentence was inconsistent, severe, and constituted cruel and unusual punishment.
¶ 2. We find no reversible error; therefore, we affirm Mitchell's conviction and sentence.

FACTS
¶ 3. Wilfred Mitchell and a "John Doe" were indicted by a Marshall County grand jury for the aggravated assault of Sammie Johnson, Daniel Snow, and Shanta Thomas.[1] During Mitchell's trial, the State presented the testimony of several witnesses, including that of Johnson, Snow, and Thomas.
¶ 4. Johnson testified that on the morning of November 28, 1999, when he went to crank his car outside of his home, two men overpowered him. Johnson further testified that the men took his money and jewelry and forced him back into the house at gunpoint. Once inside the house, Johnson was forced to lie on the floor. While on the floor, he was shot in the back and stomach.
¶ 5. Snow, who was also in the house at the time of the shootings, testified that he was in the bathroom washing his face when he turned around and saw a pistol in his face. Snow stated that Mitchell's accomplice *6 pointed the gun at him and told him not to move. Snow further testified that when he did not remain still as instructed, the man shot him in the shoulder. Snow testified that he knew Mitchell before the assault. He made an in-court identification of him as one of the assailants.[2]
¶ 6. Thomas, who was in bed when the shootings occurred, testified that Mitchell entered her bedroom, pushed her, and then shot her three times, in the hand, throat, and in the side of her neck.
¶ 7. Mitchell testified on his own behalf. He testified that he was not involved and was at home with his girlfriend at the time of the shootings. The jury, however, convicted Mitchell of all three counts of aggravated assault. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Ineffective Assistance of Counsel
¶ 8. Mitchell first argues that he received ineffective assistance of counsel at trial. He specifically contends, among other things, that his attorney failed to object to his arraignment, failed to adequately prepare for trial, failed to interview and call certain witnesses, and failed to make certain objections and motions. The State, of course, counters that Mitchell received effective assistance of counsel.
¶ 9. To establish an ineffective assistance of counsel claim, Mitchell must show (1) a deficiency in counsel's performance that is (2) sufficient to constitute prejudice to his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 10. A review of the record reveals that Mitchell has failed to establish both elements of the Strickland test. We note that even if trial counsel's performance could be considered deficient in failing to do those things alleged by Mitchell, he has yet to prove the requisite showing of prejudice to support an ineffective assistance of counsel claim. The law is clear that "[a]ssertions of error without prejudice do not trigger reversal." Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 751 (Miss.1996) (citing Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993)).
¶ 11. Further, Mississippi "recognizes a strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter v. State, 574 So.2d 685, 687 (Miss.1990) (citing Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)). To overcome this presumption, the defendant "must show that there is a `reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" Handley v. State, 574 So.2d 671, 683 (Miss.1990) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). In addition to the presumption that counsel's conduct is reasonably professional, there is a presumption that counsel's decisions are strategic in nature. Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985) (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984)). In sum, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." Cole v. State, 666 So.2d 767, 777 (Miss.1995) (citing Murray, 736 F.2d at 279).
¶ 12. Mitchell has failed to demonstrate the likelihood of a different outcome had counsel performed in a different manner. *7 As a result, his argument on this issue fails.

(2) Arraignment
¶ 13. In this issue, Mitchell contends that he entered a not guilty plea to only one count of aggravated assault, but he was nevertheless tried and convicted of two additional counts of aggravated assault for which he was never arraigned. Mitchell essentially argues that the trial court's failure to arraign him on the two additional counts violated his due process rights.
¶ 14. We note from the outset, and the State properly advances, that Mitchell failed to raise this argument at trial, or in any subsequent post-trial motions. Our supreme court has held that an arraignment may be waived when a defendant proceeds to trial without an objection. Spry v. State, 796 So.2d 229, 233 (¶ 12) (Miss.2001) (citing Bufkin v. State, 134 Miss. 1, 98 So. 452 (1923)). Therefore, because Mitchell failed to raise an objection at trial, his argument is procedurally barred.
¶ 15. However, procedural bar aside, we find that Mitchell's argument is lacking in merit. The record reflects that on October 5, 2000, Mitchell signed a document entitled "Waiver of Arraignment and Entry of Plea," in which he pleaded not guilty to "aggravated assault." While the waiver does not specific any counts, it does state that Mitchell, in open court, "acknowledges service of a copy of the indictment on a charge of aggravated assault." There is no allegation that there was more than one indictment involved. Therefore, Mitchell's acknowledgment that he received the indictment most assuredly referred to the multi-count indictment charging him with three counts of aggravated assault against three different victims. As a result, we find that Mitchell was given sufficient notice of the charges against him, and had an adequate opportunity to defend himself. Moreover, on the morning of the trial, the trial judge advised the jury that Mitchell was charged with assaulting three different individuals on the same day. The name of each victim was called. Mitchell did not claim at that time that he was unaware that he was being tried for the aggravated assault of the three people named by the trial judge. Surely, if he thought he was on trial for assaulting only one person, he would have said something then.
¶ 16. Finally, Mitchell, without making any meaningful argument, asserts that the waiver of arraignment form was signed by a public defender, even though he never requested that the trial court appoint him an attorney. We note that beyond this assertion, Mitchell offers no additional proof that he was prejudiced. Therefore, this argument is similarly without merit.

(3) Sufficiency of Indictment
¶ 17. Mitchell argues that the indictment was defective and insufficient for two reasons. He first claims that the indictment did not include certain mitigating circumstances. Mitchell claims that had these mitigating circumstances been included in the indictment, the grand jury would have possibly found that the State did not have enough evidence to proceed with its case against him.
¶ 18. Mitchell also argues that the indictment was insufficient because he was indicted by a joint indictment. He claims that the indictment did not meet the specifications set forth in Rule 7.08 of the Uniform Rules of Circuit and County Court, which governs the joinder of defendants in indictments.
*8 ¶ 19. We recognize that defects of substance must be corrected by the grand jury, but courts may amend an indictment to correct a defect in form. Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994) (citing Griffin v. State, 584 So.2d 1274-76 (Miss.1991)). However, the record reflects, and the State argues, that Mitchell failed to bring the matter to the attention of the trial judge. As a result of Mitchell's failure to raise an objection to the indictment at trial, we find that this issue is procedurally barred.
¶ 20. Nevertheless, notwithstanding the procedural bar, we find that Mitchell has failed to prove any prejudice to his defense or that the indictment failed to comply with the requirements of Rule 7.08. Rule 7.08 permits the joinder of two or more defendants in the same indictment when "[e]ach defendant is charged with accountability for each offense charged." The indictment here charged that Mitchell and a "John Doe" committed each of the assaults. The fact that Mitchell may have actually shot only one victim while his co-defendant shot the other two does not exonerate him from liability for the other two assaults since the evidence was that he and his co-defendant were acting in concert. Therefore, this issue fails on the merit as well.
¶ 21. Finally, Mitchell asserts that "the State knew or through reasonable means should have known that Derrick Boxley was the John Doe named in the indictment." He further contends that the State had a duty to disclose to him any known suspects. Mitchell now claims prejudice, and argues that this information would have provided him another defense mechanism.
¶ 22. We first note that Mitchell fails to cite authority in support of his assertion. We have held on numerous occasions that an appellant has a duty to make more than mere assertions, and should set forth reasons and cite authority in support of his arguments. Clark v. State, 503 So.2d 277, 280 (Miss.1987) (citing Johnson v. State, 154 Miss. 512, 122 So. 529 (1929)). If the party fails to provide this support, we are not obligated to consider the assignment of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss. 1997) (citing Hoops v. State, 681 So.2d 521, 526 (Miss.1996)). Thus, Mitchell has waived his argument on this issue.
¶ 23. However, notwithstanding the waiver, we find that Mitchell's argument is without merit. The record reflects that the State issued a subpoena for Boxely, but the subpoena was returned unserved. Mitchell has failed to provide evidence that he made a reasonable attempt to locate Boxely himself, nor has he provided proof of how his defense was prejudiced by Boxely's absence.

(4) Speedy Trial
¶ 24. Mitchell argues that he was denied his Sixth Amendment right to a speedy trial. He contends that the eighteen month delay between his arrest and the time of his trial was severely prejudicial and was caused solely by the State. Mitchell specifically claims that this delay resulted in his not being able to adequately assist in his defense, caused several witnesses to become unavailable to testify, and caused other witnesses to forget material facts.
¶ 25. The constitutional right to a speedy trial attaches, and begins to run upon the defendant's arrest. Handley v. State, 574 So.2d 671, 674 (Miss.1990) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). When the right to a speedy trial is at issue, we are required to apply the balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 *9 L.Ed.2d 101 (1972) to determine if the right to a speedy trial has been denied. Smith, 550 So.2d at 408. The Barker factors include: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) prejudice to the defendant by the delay. Barker, 407 U.S. at 530, 92 S.Ct. 2182. "No one factor, in itself,[ is] dispositive; rather, they must be considered together in light of all the circumstances." Adams v. State, 583 So.2d 165, 167 (Miss.1991)(citing Smith, 550 So.2d at 408).
¶ 26. We now analyze the Barker factors in order to determine if Mitchell's right to a speedy trial was violated.

(a) Length of Delay
¶ 27. Under Mississippi law, a delay of eight months or longer is presumptively prejudicial. Adams, 583 So.2d at 168 (citing Smith, 550 So.2d at 408). The record reveals that Mitchell was arrested on November 28, 1999, indicted on April 12, 2000, and his trial began on May 29, 2001. Thus, a period of approximately eighteen months elapsed before Mitchell's case was taken to trial. Accordingly, we find that the delay in the instant case is presumptively prejudicial.

(b) Reason for Delay
¶ 28. Because there is a presumptive prejudice due to the length of delay in Mitchell's trial, the State has the burden of providing a valid reason for the delay. The record reflects that the trial was initially set to begin on August 22, 2000, but for reasons unexplained in the record, the date was subsequently changed to November 7, 2000. Thereafter, the case was continued by agreement of the parties until February 20, 2001. Again, for reasons unexplained in the record, the trial date was rescheduled for May 21, 2001, and trial began on May 29.
¶ 29. Although the State argues that the case was continued by agreement of the parties on one occasion, and that Mitchell failed to request a trial date, we find that only approximately three and one half months of the delay can be attributable to Mitchell. As a result, this factor is weighed against the State.

(c) Assertion of Right
¶ 30. Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant also has a responsibility to assert this right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991) (citing Flores v. State, 574 So.2d 1314, 1323 (Miss.1990)). Nothing in the record suggests that Mitchell ever requested a trial date, or made a demand for a speedy trial. Accordingly, we weigh this factor against Mitchell.

(d) Prejudice to the Defendant
¶ 31. Mitchell claims that his defense was prejudiced due to the delay in bringing his case to trial. He specifically contends that he was unable to adequately assist in his defense due to the length of his pretrial incarceration, some of his witnesses were unable to recall material facts at trial, and possible witnesses were unavailable to testify at the time of trial.
¶ 32. Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) limitation of the possibility of impairment of defense, and (3) minimization of anxiety and concern of the accused. Barker, 407 U.S. at 523, 92 S.Ct. 2182.
¶ 33. The record reveals that, during trial, in addition to testifying on his own *10 behalf, Mitchell presented the testimony of three witnesses. Thus, Mitchell had an opportunity to present his theory of the case for consideration by the jury. Further, although Mitchell claims that his pretrial incarceration resulted in his not being able to talk to possible witnesses and alleges that the delay in bringing him to trial caused other possible witnesses to become unavailable to testify, he fails to identify the witnesses or set forth what the witnesses would have testified to had he been tried earlier. Accordingly, we fail to see how the delay resulted in prejudice to his defense. This factor must be weighed against him.

(e) Balancing
¶ 34. Finally, a balancing of the Barker factors fails to support Mitchell's claim that he was denied his constitutional right to a speedy trial. While there was some delay attributable to the State, it is offset by Mitchell's failure to assert his right to a speedy trial. Further, Mitchell has failed to demonstrate any actual prejudice as a result of the delay. Therefore, this issue is without merit.

(5) Jury Instruction S-1
¶ 35. Mitchell next argues that the trial court erred in granting jury instruction S-1. He contends that the instruction lessened the burden of proof for the State because it only required the State to prove that he caused the victims bodily harm, instead of the requisite showing of serious bodily harm. Mitchell also contends that the instruction improperly addressed the issue of self-defense since he did not present evidence during trial that he had acted in self-defense during the commission of the crime.
¶ 36. Here, the record reflects, and the State argues, that Mitchell failed to make a contemporaneous objection to the granting of instruction S-1. The appellate courts of this state have repeatedly held that "`if no contemporaneous objection is made, the error, if any, is waived.'" Walker v. State, 671 So.2d 581, 587 (Miss. 1995) (quoting Cole v. State, 525 So.2d 365, 369 (Miss.1987)). Therefore, Mitchell's argument is procedurally barred.
¶ 37. However, notwithstanding Mitchell's failure to object, we fail to find merit in Mitchell's argument. "`When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed.'" Milano v. State, 790 So.2d 179, 184 (¶ 14) (Miss.2001) (quoting Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993)). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." Milano, 790 So.2d at 184 (¶ 14).
¶ 38. A review of the instructions as a whole reveals an adequate statement of the law. Instruction S-1, although lengthy, sets forth the applicable burden of proof by instructing the jury that if it found from the evidence beyond a reasonable doubt that Mitchell purposely and knowingly caused bodily injury by shooting the victims with a deadly weapon and was not acting in self-defense, the defendant should be found guilty. Further, in addition to giving other instructions, the trial judge gave instruction S-2 which instructed the jury that a deadly weapon was any object which was likely to produce death or serious bodily harm. Thus, we find that the jury was properly informed.

(6) Jury Instruction S-5
¶ 39. In his next assignment of error, Mitchell challenges the trial judge's grant of instruction S-5. Mitchell specifically *11 claims that the instruction was not warranted by the facts or evidence presented during trial and led the jury to believe that the victims were shot during the commission of a robbery.
¶ 40. Instruction S-5 instructed the jury as follows:
The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.
¶ 41. The record reflects that Mitchell made the following objection to instruction S-5:
MR. MINOR: Your honor, we object to that. First, we think it's somewhat cumulative, and secondly, we feel that the element of robbery was injected into this, not only discovery, nothing provided the defendant before trial referring to a robbery. I think that this instruction is like inducing vomiting when you've got (inaudible) just bring them back up [sic]. This instruction talks about engaging in the commission of a felony. I think that suggests to the jury that the felony is robbery. We didn't come prepared for robbery. We don't know anything about robbery, and I think we feel like the Court is in error in allowing them to do that.
THE COURT: All right. The objection is noted. The instruction will be given.
¶ 42. Again, after reviewing the instructions together as a whole, and not in isolation, we find that the trial judge did not err in granting the instruction. When read in conjunction with the other instructions, it is clear that the felony referred to in instruction S-5 refers to aggravated assault, and not robbery. As a result, this issue lacks merit.

(7) Evidence of Another Crime
¶ 43. Mitchell contends that the trial court erred in allowing the State to present evidence of an additional crime during rebuttal testimony. He specifically argues that the court allowed the State to present evidence that the aggravated assault occurred during the commission of a robbery. Mitchell further contends that this evidence was outside the scope of the indictment and was highly prejudicial to him. The State, however, maintains that the evidence is admissible because a defense witness first opened up evidence concerning the robbery.
¶ 44. This Court reviews a trial court's rulings on the admissibility of evidence under an abuse of discretion standard. Clemons v. State, 732 So.2d 883, 887 (¶ 18) (Miss.1999) (citing Peterson v. State, 671 So.2d 647, (Miss.1996)). The trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be appropriate when an abuse of discretion resulting in prejudice to the accused occurs. Id. at 887-88.
¶ 45. Here, the record reflects that during Mitchell's case-in-chief, the following exchange occurred between Mitchell's attorney and defense witness Diane Luellen, who was present during the commission of the crime:
Q: Tell us what happened that day.
A: All I know, I was laying on the couch, and next thing I know, I heard something say, they came in, and I don't know how many was it. All I know, they came in and said, nobody leave this room. I can't say what they said. This is a mother-f robbery, and my head was covered up.
¶ 46. At the conclusion of the defense's case, the State moved to present rebuttal testimony concerning the robbery. The *12 trial judge granted the State's motion on the basis that it would be more probative than prejudicial to allow the testimony. The judge also ruled that the testimony would establish a motive for the crime. On rebuttal, Johnson testified that the assailants held a gun to his head and forced him to give up his money and jewelry.
¶ 47. We find that the record does not necessarily support the State's contention that the testimony at issue was admissible in rebuttal following the close of the defense's case simply because the word "robbery" was first mentioned by a defense witness during the defense's case. It does not appear to us that Mitchell's attorney intentionally asked about the robbery. It is true that he asked an open-ended question and perhaps should have recognized that the question might draw the response that it did. More importantly, however, the record reflects that the State, during its cross-examination of the defense witness, did not even attempt to cross-examine the defense witness about the robbery. If the door to that matter had been opened by the defense on direct examination, the State should have walked through the door during its cross-examination of the witness.
¶ 48. Rebuttal evidence is ["e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party." BLACKS LAW DICTIONARY 1267 (6th ed.1990). After the defense witness made the statement that the assailants announced that "[t]his is a mother-f robbery" there was nothing further to explain, repel, counteract or disprove. Surely, the State did not intend to disprove that the statement was made, and the statement speaks for itself; therefore, there was nothing to explain. This evidence could have been, and should have been, introduced during the State's case-in-chief to show motive and to tell a complete and rational story. The fact that Mitchell was not charged by indictment with robbery is of no consequence. "[T]he State has a `legitimate interest in telling a rational and coherent story of what happened....'" Brown, 483 So.2d at 330 (quoting Turner v. State, 478 So.2d 300, 301 (Miss.1985)). Thus, "[w]here substantially necessary to present to the jury `the complete story of the crime[,]' evidence or testimony may be given though it may reveal or suggest other crimes." Brown, 483 So.2d at 330 (quoting State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964)).
¶ 49. We, therefore, conclude that the trial court erred in admitting, as rebuttal evidence, testimony regarding the robbery of Sammie Johnson. However, we find, because of two reasons, that the testimony concerning the robbery constituted harmless error. First, it could have properly come in during the State's case-in-chief. Second, there was an abundance of evidence of Mitchell's guilt even without this evidence. "[A]n error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Floyd v. City of Crystal Springs, 749 So.2d 110, 120 (¶ 37) (Miss.1999) (citing Forrest v. State, 335 So.2d 900, 903 (Miss. 1976)).

(8) Weight of Evidence
¶ 50. Mitchell claims that the jury's verdict was against the overwhelming weight of the evidence and that the trial court erred in not granting his motion for a new trial. Although Mitchell indicates in the caption to his issue that the verdict was against the overwhelming weight of the evidence, the argument that he makes in support of the issue goes to both the sufficiency and weight of the evidence. Therefore, we will consider the *13 sufficiency and weight of the evidence separately.
¶ 51. On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Fisher v. State, 481 So.2d 203, 212 (Miss.1985)).
¶ 52. We find that ample evidence was offered by the State in support of Mitchell's conviction. The State presented eyewitness testimony and in-court identifications implicating Mitchell in the crime. There is no dispute that each of the victims was shot by either Mitchell or his co-defendant after they forced their way into the victim's house. This is substantial evidence of Mitchell's guilt.
¶ 53. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090 (¶ 11) (Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222 (¶ 30) (Miss.2000)).
¶ 54. The facts and inferences in this case point directly toward Mitchell's guilt. Considering the evidence presented by the State in support of Mitchell's conviction, and its substantial weight against him, we are not convinced that the jury's verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Consequently, we find that the trial court did not abuse its discretion in denying Mitchell's motion for a new trial. This issue is without merit.

(9) Sentence
¶ 55. Finally, Mitchell contends that his sentence was severe and constituted cruel and unusual punishment. Mitchell essentially argues that since he did not actually shoot two of the victims, he should have received a lesser sentence on those two counts of aggravated assault. He further contends that the fact that he received the same sentence as an accomplice violates the principle of fundamental fairness.
¶ 56. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops, 681 So.2d 521, 537 (Miss.1996) (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). "`Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.'" Hoops, 681 So.2d at 538 (quoting Fleming v. State, 604 So.2d 280, 302 (Miss. 1992)). "Proportionality review is required, however, in particular situations." Hoops, 681 So.2d at 538. No such situation, however, is implicated here.
¶ 57. We fail to see how Mitchell's sentence constituted cruel and unusual punishment. The State presented evidence that Mitchell shot one victim and actively assisted in the assaults against the two other victims. The law is clear that "`[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and *14 abetter' and is equally guilty with the principal offender.'" Hoops, 681 So.2d at 533 (quoting Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989) (overruled on other grounds)). Thus, the trial judge had complete discretion to sentence Mitchell as if he had shot all three victims. Mitchell's argument to the contrary is without merit.
¶ 58. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY OF CONVICTION OF THREE COUNTS OF AGGRAVATED ASSAULT AND CONSECUTIVE SENTENCES OF FIFTEEN YEARS ON EACH COUNT, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] At the time of trial Mitchell's co-defendant had not been located.
[2] Mitchell testified that he and Snow were cousins.