GRIFFIS, J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. On February 21, 2003, J.N.W.E filed a motion for modification of child custody and other relief with the Yazoo County Chancery Court seeking modification from a previously entered divorce decree in which W.D.W.was granted custody of the parties’s minor son.[1] On November 10, 2003, J.N.W.E. substituted Ceola James as her attorney of record in place of Shari K. Herring. On November 24, 2003, W.D.W. filed a motion to remove Ceola James as J.N.W.E.’s counsel, alleging that James, while serving as chancellor for Washington County, heard and decided a civil action involving the parties regarding the modification of child custody.
¶ 2. On December 15, 2003, the chancellor signed an order disqualifying James as counsel for J.N.W.E. due to James’ prior involvement as chancellor in this case. On December 22, 2003, J.N.W.E. filed motions seeking the recusal of the chancellor and the removal of Derek Parker as counsel for W.D.W. J.N.W-E. also filed a motion to *14 vacate the December 15, 200S order which disqualified James as her attorney. On March 22, 2004, nunc pro tunc, March 18, 2004, the chancery court denied the motion for recusal of the chancellor and continued the motion for the disqualification of W.D.W.’s counsel and the motion to vacate the order disqualifying J.N.W.E.’s counsel. On March 22, 2004, the chancery court refused to set aside its order disqualifying James, finding that James had violated Rule 1.12 of the Rules of Professional Conduct because James, as chancellor, substantially participated in litigation involving the parties for the same issues for which James was representing J.N.W.E.
¶ 3. Aggrieved, J.N.W.E. now appeals, asserting that the chancellor erred in not granting the recusal motion and in disqualifying her attorney from participating in this matter while refusing to disqualify Appellee’s attorney. J.N.W.E. also argues that the chancellor abused her discretionary power in various ways.
STANDARD OR REVIEW
¶ 4. “[Findings of a chancellor will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.” Hamilton v. Hopkins, 834 So.2d 695 (¶ 12) (Miss.2003).
ANALYSIS AND DISCUSSION
(1) Motion for recusal
¶ 5. J.N.W.E. argues that the chancellor’s impartiality was drawn into question and that the record reflects a manifest abuse of discretion. J.N.W.E. maintains that the chancellor evidenced prejudice against her in comments that the chancellor allegedly made that are not reflected in the record before us. J.N.W.E. suggests that we order the tape duplicated for our review. We decline J.N.W.E.’s suggestion inasmuch as the appellant is required to provide us with a record that is adequate to support his issues. Burney v. State, 515 So.2d 1154, 1160 (Miss.1987). We are not able to locate anything in the record suggesting that counsel attempted to acquire a copy of the stenographer’s tapes and have them made a part of the record on appeal.
¶ 6. In Mississippi, “a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.” Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986). After a careful review of the record, we find nothing that would lead a reasonable person to believe that the chancellor had any bias or prejudice towards any of the parties or their attorneys. The Mississippi Code of 1972 as amended and the Mississippi Constitution also contain standards for which a judge may be disqualified.
¶ 7. The Mississippi Constitution provides:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties....
Miss. Const, art. 6, § 165 (1890).
¶ 8. The Mississippi Code of 1972 as amended provides:
The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, *15 except by consent of the judge and of the parties.
Miss.Code. Section 9-1-11 (Rev.2002).
¶ 9. We find that the chancellor in the case sub judice is not disqualified under Section 165 of the Mississippi Constitution or under section 9-1-11 of the Mississippi Code. “When a judge is not disqualified under § 165 of the Mississippi Constitution or Section 9-1-11, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion.” Rutland v. Pridgen, 493 So.2d 952 (Miss.1986). We find no manifest abuse of discretion in the chancellor’s denial of the motion for recusal.
(2) Disqualification of the Appellant’s attorney
¶ 10. On or about November 21, 2001, James, while serving as a chancellor in Washington County, signed a temporary order that stayed the visitation rights of W.D.W. with the parties’ son, pending a final hearing. On February 23, 2002, a judgment was signed by James extending the November 21, 2001 temporary order that prohibited unsupervised visitation by W.D.W. with his minor son pending further order of the Chancery Court of Yazoo County, Mississippi.
¶ 11. J.N.W.E. argues that James should not have been removed because James, while serving as a chancellor in Washington County, never heard the claim of abuse on the merits.
Rule 1.12 of the Mississippi Rules of Professional Conduct states, in pertinent part:
Except in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person.
Miss. R. Prof. Conduct 1.12
¶ 12. The trial court found that James’s action, as chancellor, in signing the aforementioned orders in the litigation between the same parties and the same subject matter constituted a violation of Rule 1.12 of the Mississippi Rules of Professional Conduct. On the other hand J.N.W.E. does not deny that James signed the orders but argues that the signing of the orders does not constitute substantial participation in the case. Further, J.N.W.E. contends that the proceeding in which James entered the orders “ended in 2001 and is not related to the merits of this case.” J.N.W.E. asserts that James, as chancellor, did not hear any of the evidence. Therefore, James did not substantially participate in the litigation as chancellor.
¶ 13. The comment to Rule 1.12 states: The term “personally and substantially” signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits.
Miss. R. Prof. Conduct 1.12, cmt.
¶ 14. The record reflects that as chancellor, James entered three orders in a case brought in the Chancery Court of Washington County, styled “J. N.W. v. W. W.” The first order, entered on November 21, 2001, stayed unsupervised visitation by W.D.W. with the parties’ minor child until *16 the matter could be heard on its merits. A supplemental order was entered on November 28, 2001, setting the matter for trial on December 14, 2001. The third and final order was entered on January 23, 2002. This order extended the temporary order of November 21, 2001, “pending further order of the Chancery Court of Yazoo County, Mississippi.” The basis for the ban on unsupervised visitation was an allegation that W.D.W. had sexually abused the minor child.
¶ 15. These orders were entered after W.D.W. filed a complaint for divorce in the Yazoo County Chancery Court but prior to the parties’ being divorced on June 20, 2002. The judgment of divorce granted custody of the parties’ minor child to W.D.W.[2]
¶ 16. The present litigation underlying the recusal motion and the motion and counter motion to disqualify the parties’ respective counsel revolves out of a pleading filed on January 9, 2004, by J.N.W.E. entitled “Amended Motion for an Emergency Hearing for Temporary Placing of Custody by DHS Pending a Hearing of Modification of Custody.” This document states, inter alia, that “[b]ecause of allegations of abuse [the minor child] has been placed in the custody of the Yazoo County Department of Human Services since February 24, 2003.”
¶.17. It is unclear from the record whether the reference to the allegations of abuse referenced in J.N.W.E.’s January 9, 2004 pleading refers to the allegations of abuse first made in November 2001. However, it is reasonably clear that the allegations refer to abuse by W.D.W. against the parties’ minor child.
¶ 18. Based on these facts, we find that James’ participation in the litigation between the parties, as a chancellor, was substantial, and thus she was properly disqualified under Rule 1.12 of the Rules of Professional Conduct from representing J.N.W.E. in her ongoing battle with W.D.W. over the custody of the parties’ minor child. Therefore, we affirm the chancellor’s decision disqualifying James as J.N.W.E.’s attorney.
(3) Disqualification of the Appellee’s attorney
¶ 19. J.N.W.E. argues that Derek Parker, attorney for W.D.W., should have been disqualified from representing W.D.W. because Parker served as a youth court judge during the time in which the alleged abuse of the parties’ minor child was before the youth court. J.N.W.E. maintains that because Parker worked as a youth court judge, Parker had access to the parties’ record in youth court and that this access put Parker in a more favorable position. J.N.W.E. maintains that the chancellor’s refusal to remove Parker was an abuse of discretion inasmuch as the chancellor chose to remove her attorney.
¶ 20. After listening to the evidence, the chancellor found that there was no evidence presented that Parker ever acted as a judge in the case. The evidence considered by the chancellor included the testimony of Parker and two other witnesses, Charlotte Langley and Patricia Nelson, a supervisor with the Department of Human Services. We discuss Parker’s testimony first.[3]
¶ 21. Parker testified as follows:
*17 Q. You’re like a referee, right?
A. I have been appointed special youth court judge on two occasions, I believe, by order óf Judge Thomas in over the past four or five years.
Q. Okay. While you was Mr. W.D.W. attorney [sic], have you sat on the bench for Judge Thomas at any time?
A. I think so, yes.
Q. Okay. So you have access to my son’s records to look at if you wanted to?
A. Yes, as would anyone who was involved in that case. Youth court records are confidential, but not as to parties or attorneys who are actually involved in the case.
Q. So you really had access to all of the files about Judge Thomas’ custody and abuse and stuff?
A. No, I don’t have access to all of the files. The only files I have access to are ones in which I am participating as an attorney.
Q. So you was on the bench for Judge Thomas while you was W.D.W. attorney?
A. You’ve already asked that and I have answered, yes.
[[Image here]]
THE COURT: Mr. Parker, while you were serving for Judge Thomas, did you have occasion to hear anything as it related to the W.D.W. case?
THE WITNESS: I do not believe so, Your Honor. I would not knowingly have heard anything regarding this case. I was actively representing Mr. W.D.W. in youth court before Judge Thomas in this matter.
THE COURT: But not sitting as judge
in this matter?
THE WITNESS: No. No.
Charlotte Langley gave the following
pertinent testimony:
Q. What do you know?
A. I was present back in May when you [J.N.W.E.] approached the DHS worker, Patricia Nelson, to ask for a visit with your son ... for Mother’s ■ Day. She picked up the phone. She made the call, because she said Hudson Thomas was on vacation. She made the call. She got off the phone and she relayed to us that—
MR. PARKER: Object as to hearsay, Your Honor.
* * * *
Q. Were you present in the room at the time of the phone call?
A. I was there during the phone call as she was relaying back and forth with Mr. Parker.
¶ 22. Patricia Nelson’s testified as follows under direct examination by J.N.W.E.:
Q. Ms. Nelson, do you have knowledge of Derek Parker being on the bench for Judge Thomas while he’s out?
A. Yes.
Q. Do you know how many times?
A. No, I don’t know how many times.
Q. Do you recall a phone call you made to Derek1 Parker asking for visitations for Mother’s Day?
A. I really don’t. I try [sic] to find proof that I had called him. Obviously, if I did, I didn’t write it down. I just know that whenever Judge Thomas is out, usually Mr. Parker is the person that we call to ask *18 questions about it, but I just don’t really remember that.
¶ 23. On cross-examination conducted by W.D.W., Nelson gave this testimony:
Q. Ms. Nelson, you have been involved in this case involving [the minor child] is that right?
A. That’s right.
Q. You’ve been through your file, I take it.
A. Yes, sir. I’m the person that approves all investigations that come through.
Q. Did you find any evidence in your file that I had ever done anything in the matter [involving the minor child] in a judicial capacity?
A. Well, to be honest with you, Mr. Parker, I didn’t have but about five minutes notice, because I was coming in from Belzoni at the time. I tried to find something. I didn’t see anything.
Q. Do you have any recollection of my doing so?
A. So much has happened in this case, I really don’t know. I wish I could come up with the dates and times. The only thing I could come up with is what we have documented, but I am not the worker for the case. I am the supervisor for the case.
MR. PARKER: I don’t have anything else, Your Honor. Thank you.
THE COURT: So, Ms. Nelson, you have no recollection of having called Mr. Parker as the judge in this matter? I know he’s been the attorney in this case.
THE WITNESS: I wouldn’t call him as the attorney. The only thing I would call him would have to be in capacity as sitting in for Judge Thomas. We don’t call attorneys and talk to attorneys. So the only way I would have called him would have been in judge capacity [sic]. I couldn’t find anything. You know, they said I did, and I tried to remember. It seems like I did. I don’t know. I make so many some phone calls [sic]. I really don’t know.
¶ 24. Were we sitting as the trier of fact, we may have made a different finding on the question of whether Parker had had any involvement in this case while sitting as a judge, and consequently, we may have reached a different conclusion as to his disqualification. However, since we are obligated to give deference to findings of fact made by the trial judges, we feel compelled to affirm the chancellor’s decision not to disqualify Parker on the basis of prior judicial involvement in the case.
(4) Abuse of discretionary power
¶ 25. Under this issue, J.N.W.E. argues that the chancellor abused her discretion (1) in refusing to consolidate the two motions for removal of the parties’ respective counsel, (2) in giving her only ten days to hire an attorney before dismissing her case with prejudice, and (3) in dismissing her attorney and not also dismissing Wood’s attorney even though Wood’s attorney was privileged as a judge to all of the confidential information in the youth court files regarding the abuse issue.
¶ 26. The consolidation of the two motions would have certainly conserved judicial resources. Nevertheless, we do not find that the chancellor abused her discretionary power.
¶27. The dissent contends that this case should be reversed and remanded for further proceedings. The dissent concludes that dismissing J.N.W.E.’s motion for modification and returning custody of the minor child to the custodial father, without determining if there was any merit to the abuse allegations, was not the proper solution to address the delay occasioned by J.N.W.E.’s lack of diligence in pursuing *19 this matter. Certainly, our preference would be that any sexual abuse charges be heard and resolved. However, we look at the appellant’s argument and do not see this as an issue to be considered on appeal.
¶ 28. In her brief, the appellant argues:
4. Did the judge of the lower court abuse her discretionary power?
Appellant believes that the judge of the lower court abused her discretionary power in the following manner: (1) The lower court refused to consolidate the two Petitions for Removal. Appellant’s attorney was dismissed and the appellant was required to conduct her own hearing. Appellant believed that the Chancellor further abused her discretion when the Appellant was only given ten (10) days to hire an Attorney after which the Appellant’s case was dismissed with prejudice. Abuse of the judge’s discretionary power was also shown when the Appellant’s attorney was dismissed and the Appellee’s attorney was not dismissed even though he was privileged as a Judge to all of the confidential information in youth court. A judge in presumed to be qualified and unbiased in the administration of his duties. In order to overcome that presumption, the proponent of recusal must present evidence that produces a “reasonable doubt” about the judge’s impartiality. Turner v. State, 573 So.2d 657 (Miss.1990); Rutland v. Pridgen, 43 So.2d 952 (Miss.1966). The record in this case shows more than a reasonable doubt about the judges impartiality.
This is the entire argument. There is simply no legal argument submitted on any issue other than the disqualification of the attorneys or recusal of the chancellor. The appellant does not argue that the chancellor abused her discretion in dismissing this case.
¶ 29. The appellant cited two cases. First, the Turner case dealt with a question of whether former Chief Justice Ed Pittman should be recused because he was a former Mississippi Attorney General. Turner, 573 So.2d at 676-79. The court rejected the appellant’s argument. Id. at 678. Second, the appellant incorrectly cited Rutland v. Pridgen, 43 So.2d 952 (Miss.1966). The correct cite is Rutland v. Pridgen, 493 So.2d 952 (Miss.1986). In Rutland, the issue was whether the judge should have recused himself due to the previous representation of a party. Id. at 953-54. Neither Turner nor Rutland support the issue relied on by the majority.
¶ 30. At the oral argument, our presiding judge gave counsel the following admonition:
In looking at the brief, I notice that there were references to some allegations of child abuse in this case. That matter is not before the court today. The only thing that is before the court today is the question of the recusal of the chancellor and the dismissal of the attorneys. So I would caution counsel to limit arguments to those points.
Ms. James, arguing for the appellant, then stated, “That is correct Your Honor. I don’t believe that the subject of abuse has ever been before the chancellor. I believe that has been before the other court.” Hence, we reject the dissent’s conclusion that this Court should reverse and remand for the chancellor to determine the substance of the modification motion, i.e, whether there was any abuse, which was not before this Court.
¶ 31. In Varvaris v. Perreault, 813 So.2d 750, 753 (¶ 6) (Miss.Ct.App.2001), we held that where the appellant
fails to present any legal authority to support his appeal or the issues of his appeal, if one can decipher exactly what issues if any are presented. Therefore, *20 this Court finds that the issue is waived not only for the failure to cite authority, but the failure to address the issue. The law is well established in Mississippi that this Court is not required to address any issue that is not supported by reasons and authority. Hoops v. State, 681 So.2d 521, 535 (Miss.1996) (citing Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982)).
In Mitchell v. State, 915 So.2d 1, 8 (¶ 22) (Miss.Ct.App.2005), we held:
We have held on numerous occasions that an appellant has a duty to make more than mere assertions, and should set forth reasons and cite authority in support of his arguments. Clark v. State, 503 So.2d 277, 280 (Miss.1987) (citing Johnson v. State, 154 Miss. 512, 122 So. 529 (1929)). If the party fails to provide this support, we are not obligated to consider the assignment of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997) (citing Hoops v. State, 681 So.2d 521, 526 (Miss.1996)). Thus, Mitchell has waived his argument on this issue.
Here, the appellant did not raise the issue relied upon by the dissent and cited no reasons or authority to support the argument. Accordingly, we find that it is waived and not properly before this Court. The only issues before the Court on this appeal relate to the disqualification of the attorneys and the recusal of the chancellor.
¶ 32. Certainly, we are concerned about allegations of abuse. The determination of whether abuse has occurred should be reviewed promptly. Here, there was a significant delay of over a year from the date the motion for modification was filed and the chancellor’s final order. During this time, the child and his father were denied an opportunity to live together, and the child was in the custody of the Mississippi Department of Human Services. He was repeatedly moved between foster homes and the Baptist Children’s Home. The seriousness of these charges notwithstanding, the dissent’s conclusion is based entirely on his sua sponte review of the entire record and independent research of issues that were neither raised nor briefed by the appellant. In 1929, Justice Griffith concluded:
It is a strange case upon which, in these days of tens of thousands of law books, no authority can be found, and when none is presented and the proposition is not manifestly well taken, there is the practical presumption that the authorities do not sustain the proposition, else they would have been cited. The courts frequently speak of such unsupported propositions as having been waived because of the failure to properly present them. There are several reasons which make it necessary to give weight to the foregoing considerations, one of which is that no Supreme Court could ever keep up with its docket if the judges were put to the tasks of briefing those cases of which the parties themselves have thought too little to brief.
Johnson v. State, 154 Miss. 512, 122 So. 529, 529 (1929). With the tremendous number of “law books” added to our jurisprudence since Justice Griffith arrived at this insightful conclusion, we believe it remains true today more than seventy-five years later.
¶ 33. Based on these reasons, we affirm the decision of the chancellor.
¶ 34. THE JUDGMENT OF THE YA-ZOO COUNTY CHANCERY COURT IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, P.J., MYERS, CHANDLER AND ISHEE, JJ. CONCUR. IRVING, . J, CONCURS IN PART AND
*21 DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE, P.J. AND BARNES, J.

. Initials have been substituted for the parties' names to protect the identity of the minor child.

. The judgment of divorce is not contained in the record before us. However, we are able to ascertain from other documents in the record that custody was in fact granted to W.D.W. and that the date of the filing of the complaint for divorce was July 30, 2001.

. As a result of the chancellor's disqualifying James, J.N.W.E. represented herself in pre *17 senting the motion to disqualify Parker which was filed by James.