GRAVES, Justice, for the Court.
¶ 1. On July 17, 2002, Southaven attorney Christian T. Goeldner was served by a complaint alleging that he had charged a client unreasonable fees in violation of Mississippi Rule of Professional Conduct 1.5. A default judgment was issued against Goeldner after neither he nor his attorney appeared before a Complaint Tribunal of the Mississippi Bar. The Tribunal found that Goeldner should be suspended from the practice of law for 90 days (with sixty days suspended if the fee at issue were submitted to the Fee Dispute Resolu *132 tion Committee of the Bar), and ordered that he pay $380.99 to cover the costs of the Bar.
¶ 2. Goeldner raises three issues in this appeal. First, should he be granted a rehearing because he had ineffective assistance of counsel, if that doctrine applies? Second, did he have a colorable defense to the default judgment? Third, was the discipline excessive in light of the evidence?
BACKGROUND
¶ 3. In December of 1999, Emory Tucker was looking to buy a home. He settled on a house he liked, signed a contract to purchase the home for $83,000, and offered an earnest money deposit of $1,000. A few weeks later he reneged on the contract and informed the sellers, John and Lynn Nardelli, that they could keep the $1,000. They sued for specific performance and for damages resulting from the breached contract, and in response Tucker retained the services of Southaven attorney Christian T. Goeldner.
¶ 4. The legal services contract Tucker entered into with Goeldner specified it would cost “$175.00 per hour for all legal services rendered in this matter,” with an initial $700 retainer. The contract noted that law clerks would be billed at 50% of the lawyer’s rate, or $87.50 an hour. Go-eldner estimated that the representation would result in a total bill of $6,970. Statements were issued monthly, and Tucker paid as the case progressed.
¶ 5. The suit against Tucker was resolved on April 9, 2001, when the parties agreed to settle for $3,100 and the Nardel-lis released the $1,000 earnest money deposit. Goeldner issued a final bill to Tucker in the amount of $9,625, or $2,655 more than the estimate. Tucker objected to portions of the fees he was asked to pay and contacted the. Mississippi Bar for recourse. Tucker ultimately paid approximately $5,967.50 to Goeldner, or a little more than a thousand dollars under the original estimate for legal services.
¶ 6. The Bar instituted this present disciplinary action on July 17, 2002, highlighting specific areas where Goeldner allegedly charged “excessive fees,” such as $175 an hour for the work of a law clerk, $70 for the preparation of a certificate of service, and correspondence at $52.50 an hour. The trial was originally set for November 15, 2002, and a continuance was filed that set the trial date at January 8, 2003. Go-eldner sought new counsel after the Bar informed him it was a conflict of interest to retain his law partner as his attorney.
¶ 7. Goeldner then retained the services of Gerald W. Chatham, Sr,, who in a letter written on December 11, 2002, confirmed that he would represent him and that he would “also file a Notice of Appearance and ask that the matter be continued.” Yet Chatham did not enter an appearance or motion for a continuance, and on January 8, 2003, the Complaint Tribunal of the bar issued a default judgment against Go-eldner, suspending him from practice for ninety days for charging an unreasonable fee, with sixty days of that period suspended if he would submit the fee to the Bar’s Fee Dispute Committee.
¶ 8. Goeldner was “shocked” at what happened. He asserted that he put all faith and trust in Chatham, and was surprised at the events. For his part, Chat-ham took full responsibility: he admitted that through his “oversight and neglect” that he did not file notice of appearance and a continuance, even though “[i]n [his] mind” he thought he had. He then made an appearance as Goeldner’s attorney on February 6, 2003 — twenty-nine days after the hearing which suspended Goeldner from practice.
*133 DISCUSSION
¶ 9. We retain exclusive jurisdiction over the Rules of Discipline for the Mississippi State Bar and we are the ultimate judge any matter arising under those rules, and we review all matters of attorney discipline de novo. Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003).
I. Does an attorney have a claim of ineffective assistance of counsel in bar disciplinary proceedings?
¶ 10. We first exercised our authority to regulate attorneys over one hundred and sixty years ago, when we declared that there was “no doubt” that we had “the power to strike from the roll of attorneys and counsellors ... the name of an individual proved to have been guilty of unprofessional or criminal conduct.” Ex parte Brown, 2 Miss. 303, 306 (1836).[1] That power was made even more apparent after the Legislature passed legislation unifying the Bar in 1932. See 1932 Miss. Laws ch. 121. Since that point, “[t]he State Bar [has been] in reality an agency of the state created in the exercise of the police power of the state for the purpose of regulating more effectively the practice of law and for the purpose of encouraging the study of improved methods of procedure and practice in the courts.” Board of Comm’rs Miss. State Bar v. Collins, 214 Miss. 782, 800, 59 So.2d 351, 355 (1952).
¶ 11. Accordingly, we have exclusive jurisdiction over this matter and all others regarding attorney discipline. Rule 1(a), Rules of Discipline for the Mississippi State Bar; Miss. Bar v. McGuire, 647 So.2d 706, 707-08 (Miss.1994). Since Mississippi Bar disciplinary matters are quasi-criminal in nature, attorneys accused in such matters are entitled to due process of law under both the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of our state constitution. Harrison v. Miss. Bar, 637 So.2d 204, 218 (Miss.1994); see also In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968).
¶ 12. Since our disciplinary matters are quasi-criminal, Goeldner argues that he has a claim for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), which announced a two-pronged test: “[fjirst, the defendant must show that counsel’s performance was deficient ... [and] [s]econd, the defendant must show that the deficient performance prejudiced the defense.” Goeldner could point to no cases in any state supporting this proposition, and it appears that no state recognizes such a right. This result was also reached in a case in the District of Columbia where an attorney made Go-eldner’s argument but “cite[d] no case, nor [did] ... research produce[ ] any ... in which effective assistance of counsel was held to be a due process requirement in bar disciplinary proceedings.” In re Slattery, 767 A.2d 203, 212 n. 10 (D.C.2001).
¶ 13. Goeldner argues he has tentative support for his argument by virtue of Terrell v. Mississippi Bar, 635 So.2d 1377 (Miss.1994). There we denied a claim of ineffective assistance of counsel in disciplinary hearings, but at length examined the result if we had adopted a Strickland *134 test. Id. at 1382-83. In Terrell, we used that hypothetical to flesh out the facts of the case. We did not, and do not, adopt a Strickland standard of ineffective assistance of counsel for disciplinary matters. While a bar disciplinary proceeding is quasi-criminal in nature, it is not sufficiently criminal in nature to trigger the protection of Strickland.
¶ 14. Goeldner is not without his options; the quasi-criminal nature of a disciplinary hearing means it is partly civil. In a civil case, one might have a claim of legal malpractice against one’s attorney.
II. Should the default judgment against Goeldner be set aside?
¶ 15. The Mississippi Rules of Civil Procedure apply to default judgments in disciplinary actions. Terrell, 635 So.2d at 1380. A default judgment granted under Rule 55 is appealed under Rule 60(b). See generally J. Jackson, M. Miller, R. Morton, J. Matheny, Civil Procedure, in 2 Ency. of Miss. Law § 13:212 (Jackson & Miller eds.2001). There are three factors which are considered before setting aside a default judgment: first, whether there is good cause to set aside the default; second, whether there is a colorable defense on the merits of the claim; third, the nature and extent of prejudice which may be suffered by the proponent of the default judgment if the default is set aside. See Williams v. Kilgore, 618 So.2d 51, 55 (Miss.1992).
¶ 16. Having a colorable defense on the merits “is a factor which should often be sufficient to justify vacation of a judgment entered by default.” Guar. Nat’l Ins. Co. v. Pittman, 501 So.2d 377, 388 (Miss.1987). Goeldner argues that he has a colorable defense; specifically, that it is “impossible” to determine if the fees he charged Tucker were excessive without further evidence. He maintains that he had an expert who would testify that his charges were reasonable and that the fee was actually reduced.
¶ 17. Simply because the fee was reduced does not determine if the fee were actually reasonable. If every time a fee was contested an attorney simply lowered the fee in response, we would never address the true issue: the responsibility of the bar to charge a reasonable fee for services provided. See Rule 1.5(a), Mississippi Rules of Professional Conduct. The very integrity of the legal profession is at stake when issues of overcharging are considered, and an attorney cannot hide from that our interest in preserving the integrity of the bar.
¶ 18. In this case, significant work was performed not by Goeldner, but by his law clerk.[2] By the very terms of the form contract he entered into with Tucker, Go-eldner’s charges were per se unreasonable. He contracted to bill no more than 50% of his hourly fee for the services of a law clerk, but instead he billed the same as if he had done the work himself. While he initially termed the law clerk billing an “error,” on his appeal to this Court Goeld-ner vigorously attempts to defend his billing, including affidavits from an expert and examples of his computer billing statements. This contradiction illuminates the fact that Goeldner has no defense at all. Goeldner cannot defend the billing, because by the very terms of the contract with Tucker it was unreasonable. Since *135 there is no defense, the default judgment entered by the special tribunal stands.
III. Was the 90-day suspension of Goeldner’s license excessive based on the evidence?
¶ 19. “The burden of proof on the Bar in an attorney disciplinary proceeding is to show that the attorney violated the rules in question by clear and convincing evidence.” Terrell, 635 So.2d at 1385. Our primary concern when imposing sanctions for attorney misconduct is that the punishment be sufficient to vindicate the overall reputation of the Bar in the public eye. Miss. Bar v. Sweeney, 849 So.2d 884, 887 (Miss.2003). While we are free to evaluate the discipline the Bar has imposed and modify that punishment as best needed to serve the best interest of the Bar and the public, we consider a set of nine criteria:
(1) the nature of the conduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the profession;
(4) the protection of the public;
(5) the sanctions imposed in similar eases;
(6) the duty violated;
(7) the lawyer’s mental state;
(8) the actual or potential injury caused by the lawyer’s misconduct; and
(9) the existence of aggravating or mitigating circumstances.
Id. at 887. Many of these factors are self-evident; it is imperative we protect the public from attorneys that overcharge for them services. In the case at hand, we look to the ninth factor, the existence of aggravating or mitigating circumstances, because this is not the first time Christian Goeldner has come before us.
¶ 20. We can contemplate the performance of a lawyer in our deliberations. See Miss. Bar v. Coleman, 849 So.2d 867, 876 (Miss.2002) (examining conduct of attorney). We also can consider prior infractions by attorneys in imposing-disciplinary measures. Byrd v. Miss. Bar, 826 So.2d 1249, 1255 (Miss.2002) (examining that attorney had been given one public reprimand, one private reprimand, and three informal admonitions in ten years when considering disbarment).
¶ 21. In his defense, Goeldner submits that his ultimate reduction of the fee should be considered as mitigating evidence. In pressing its argument, the Bar points us towards Goeldner v. Miss. State Bar Ass’n, 525 So.2d 403 (Miss.1988). In that case, a Complaint Tribunal of the Bar had determined that Goeldner “willfully misrepresented the amount of fees [in a client’s case] in order to be paid at an hourly rate in excess of that allowed by [a] chancellor’s order.” Id. at 404.
¶ 22. In that case, Goeldner had charged his client $100 an hour to act as conservator of her estate. Id. When Go-eldner filed legal action on behalf of the conservatorship, he was instructed by the chancellor overseeing the case that he could only charge $60 per hour. Id. We upheld the Special Tribunal’s finding that Goeldner had created a new and wholly fictitious billing file that totaled the same amount he would have made if he were allowed to charge $100 an hour. Id. at 404-06. His “conduct constituted a fraudulent misrepresentation to the court and to the client.” Id. at 407. Yet we did not disbar Goeldner permanently, as the Bar suggested; we only disbarred him for two years. Id.
it 23. This is difficult evidence for Goeldner to overcome. He has a reported history of both fraudulent billing and presenting it as the truth to a client and our judicial system. The Special Tribunal only *136 found that Goeldner’s over-billing of Tucker deserved a ninety-day suspension from the practice of law, with sixty days of that stayed if he would submit the fee dispute to the Bar’s Fee Dispute Resolution Committee. In light of the aggravating circumstance of a previous disbarment for a fraud upon the court, this is not an excessive punishment.
CONCLUSION
¶ 24. While the disciplinary proceedings attorneys are subject to are quasi-criminal in nature, there is no claim for ineffective assistance of counsel. Bound by the language of his own contract, Goeldner has no defense to the default judgment entered against him for unreasonableness of fees. Lastly, the aggravating circumstance of Goeldner’s previous temporary disbarment for fraudulent fees and a fraud upon the court, combined with the facts and evidence of this case, are sufficient to maintain his ninety-day suspension from practice as mandated by the Special Tribunal of the Mississippi Bar.
¶ 25. CHRISTIAN T. GOELDNER IS HEREBY SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR NINETY (90) DAYS, (WITH SIXTY (60) DAYS OF THAT PERIOD SUSPENDED IF HE SUBMITS THE FEE DISPUTE TO THE BAR’S RESOLUTION OF FEE DISPUTES COMMITTEE).
SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND CARLSON, JJ., NOT PARTICIPATING.

. There was no formal bar association at that point in Mississippi history. The first Mississippi bar association had been organized in Natchez and survived from 1821 to 1825; there would not be another until 1886. Michael de L. Landon, The Honor and Dignity of the Profession: A History of the Mississippi State Bar, 1906-1976 3-4 (1979). When Brown was decided, one might still hang a shingle and proclaim oneself a lawyer; the case did not remove him from a bar association, but instead prohibited him from practicing in any court in Mississippi. Brown, 2 Miss. at 307.

. Goeldner admitted in his "Response to Formal Complaint” to the bar that time was billed by an employee "at the rate of $175.00 per hour after his graduation and prior to his admission.” (emphases added). Until admittance to the bar, a person with a J.D. is no more than a "law clerk.”