962 So.2d 528 (2007)
Ceola JAMES
v.
The MISSISSIPPI BAR.
No. 2005-BA-01622-SCT.
Supreme Court of Mississippi.
January 18, 2007.
*530 Ceola James, pro se.
James Russell Clark, Adam Bradley Kilgore, Gwen Combs, Jackson, attorneys for appellee.
EN BANC.
DIAZ, Justice, for the Court.
¶ 1. In this attorney discipline case we are asked whether a former judge may represent a party in a case related to one over which she formerly presided. Because the Rules of Professional Conduct squarely prohibit such a situation, we hold that she may not.

FACTS AND PROCEDURAL HISTORY
¶ 2. Unusually, the factual situation underlying this case has already been examined and ruled upon by our appellate courts. See J.N.W.E. v. W.D.W., 922 So.2d 12 (Miss.Ct.App.2005), cert. denied 926 So.2d 922 (Miss.2006).[1] The facts are *531 undisputed. Attorney Ceola James served as a Chancellor in the Ninth Chancery District, which is composed of Humphreys, Issaquena, Sunflower, Warren, and Washington Counties. The case of J.N.W.E. v. W.D.W., which triggered the complaint at hand, arose in the Chancery Court of Washington County, where Ms. James was chancellor.
¶ 3. Styled a "Petition for Protection from Domestic Abuse," J.N.W.E. was brought by a mother seeking court-ordered protection for her child, who had allegedly been physically abused by her husband, W.D.W. The couple was in the process of a divorce action situated in Yazoo County.
¶ 4. J.N.W.E. moved the court for a protective order that would prevent her husband, W.D.W., from visiting with their child, alleging that the child was subject to physical harm by the father. At an emergency hearing on November 21, 2001, the court heard testimony from multiple witnesses and a statement allegedly signed by the defendant was introduced as evidence. Based upon the testimony and evidence presented, Ms. James entered an order staying any unsupervised visitation by the child's father on that same day.
¶ 5. On December 14, 2001, Ms. James held a final hearing on the issue in which the defendant appeared and acknowledged he had indeed signed the statement previously admitted as evidence, while contesting that he had actually done the acts portrayed in the statement. After this hearing, Ms. James entered another order on January 23, 2002 extending the previous order and barring W.D.W. from any unsupervised visitation with the child. This order was to extend until the final disposition of the divorce case in Yazoo County, the trial of which was set to begin the next day, on January 24.
¶ 6. On June 20, 2002, a final judgment of divorce was entered in Yazoo County. Over a year later, on November 24, 2004, an ex parte order was entered substituting Ms. James as counsel of record for J.N.W.E. in the Yazoo County divorce action. Opposing counsel quickly filed a motion to disqualify Ms. James as attorney of record, citing her previous involvement in the related child abuse case and the prohibition set forth in Mississippi Rule of Professional Conduct 1.12. After the failure of Ms. James to respond to the motion or appear at the hearing, the trial court disqualified her as J.N.W.E.'s attorney.
¶ 7. Ms. James responded with a motion to reconsider that ruling, arguing that she did not receive proper notice regarding the motion to disqualify, and also filed a motion to disqualify the attorney of W.D.W. and a motion for recusal against the trial judge. The trial judge set aside the original order to disqualify Ms. James and allowed a hearing on the merits.
¶ 8. After this hearing, the trial judge found again that Ms. James had violated Rule 1.12 and, accordingly, could not represent J.N.W.E. The court also denied the motions for disqualification of attorney and recusal filed by Ms. James, finding that they had no merit.
¶ 9. Ms. James then appealed to this Court to review the decision of the trial court. We assigned the case to our Court of Appeals for decision, but notified the Mississippi Bar of the possible violation of Rule 1.12. As noted supra, the Court of Appeals found that the trial court was correct in disqualifying Ms. James as attorney of record for J.N.W.E. because of the Rule 1.12 conflict, and we denied certiorari to review that decision.
*532 ¶ 10. Concerned that a breach of ethics had occurred, the Bar notified the Committee on Professional Responsibility, which investigated the alleged attorney misconduct. See M.R.D. 7(a). The Committee found a violation of Rule 1.12 had occurred, and a public reprimand for violation of Rule 1.12 was issued to Ms. James on January 24, 2005.
¶ 11. Pursuant to M.R.D. 7(c), Ms. James requested a formal proceeding to review the decision of the committee, and a three-member Complaint Tribunal convened for a trial of the matter on June 29, 2005. The Complaint Tribunal foundas had the Court of Appeals and the Committee on Professional Responsibilitythat Ms. James had violated Rule 1.12. It recommended a public reprimand as penalty for the violation.
¶ 12. Ms. James appealed this decision, at which time the Bar filed a motion asking for damages, as the Bar considered the appeal frivolous. The Bar argued that because multiple bodies had found a violation of Rule 1.12including the trial court; the Court of Appeals; this Court by implication, as we denied certiorari; the Committee on Professional Responsibility; and the Complaint TribunalMs. James' appeal was wholly frivolous.
¶ 13. We denied the motion, citing Rule 9 of the Rules of Discipline, which allow that "the accused attorney may, as a matter of right, appeal any disposition of the Tribunal to the [Supreme] Court." (emphasis added). For even an attorney who admits that her conduct was a violation of our rules may still appeal "the extent or absence of discipline" assessed by the Complaint Tribunal. M.R.D. 9(b).
¶ 14. Ms. James asks us to review twelve issues, and the Bar tells us there is but one. There are actually two: was there a violation of Rule 1.12? And, if so, is a public reprimand warranted? After a full review, we conclude there was a violation and that a public reprimand is warranted.

STANDARD OF REVIEW
¶ 15. This Court has exclusive jurisdiction over attorney discipline matters and is the ultimate judge in those proceedings. See Rule 1(a) of the Rules of Discipline for the Mississippi State Bar; Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003). Accordingly, matters of attorney discipline are reviewed de novo. Id. We also apply a proportionality requirement to Bar discipline cases to ensure the fairness of any penalty. Miss. Bar v. Drungole, 913 So.2d 963, 967 (Miss.2005). We will modify any punishment as needed to best serve the interests of the Bar and the public. Parrish v. Miss. Bar, 691 So.2d 904, 907 (Miss.1996).

DISCUSSION
¶ 16. The Bar urges that this matter has already been fully adjudicated by the J.N.W.E. decision in our Court of Appeals, and indeed, the facts presented to us are the same. However, attorney discipline is not a matter to be taken lightly, and as noted supra, this Court has exclusive jurisdiction over it. Whether Ms. James should be disqualified due to Rule 1.12 was a component of the J.N.W.E. case but it was not reviewed as an ethical violation, as we do here.
The Rule.
¶ 17. Rule 1.12(a) of the Mississippi Rules of Professional Conduct states, in pertinent part, that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge." The Comment explains that the Rule is not excessively broad, as

*533 The term `personally and substantially' signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits.
The Rule's purpose is to safeguard the integrity of the legal profession in Mississippi. We have never before addressed the Rule in the context of attorney discipline, but we have in the context of judicial discipline. Miss. Comm'n on Judicial Performance v. Atkinson, 645 So.2d 1331 (Miss.1994). In that case, we were faced with a municipal judge who presided over a bond hearing and established the bond for a criminal defendant, then later became an attorney for the defendant and attempted to have the same bond reduced. Id. at 1333. We found this was "a direct conflict" and agreed with the Commission on Judicial Performance that a judge who establishes a bond for a criminal defendant has acted in a substantial way in the judicial process. Id. at 1336.
Substantial Participation.
¶ 18. In the case at hand, Ms. James urges that, unlike Judge Atkinson, she did not participate substantially in the case.[2] "Substantial participation" is not as simple as a mathematical formula, although the extent of the judge's repeated participation should be assessed. The extent of the judge's interaction with the case and the litigants should be the primary focus of the inquiry.
¶ 19. The facts are undisputed that while acting as chancellor Ms. James entered three orders in the child abuse case in Washington County and presided over two hearings. The first hearing was apparently ex parte and not transcribed. The second hearing was transcribed and runs to thirty-two pages, which does not include the arguments of counsel, which were not transcribed. Ms. James questioned both attorneys about the case and specifically directed inquiries to W.D.W. about whether he had indeed abused his child or signed a statement admitting he had.
¶ 20. One of the orders crafted a temporary injunction against W.D.W. preventing him from having any unsupervised visitation with his child. Another converted this temporary injunction to a permanent one pending the outcome of the Yazoo County divorce case.
¶ 21. Accordingly, Ms. James substantially participated in the case. She read motions, conducted hearings, heard testimony, and entered orders. In fact, she handled the entirety of the child abuse case.
"Matter" Defined.
¶ 22. Ms. James further argues that even if she had participated substantially as a judge in the Washington County child abuse case, the Yazoo County divorce case is not the same "matter" as contemplated by Rule 1.12. The cases were certainly situated in different counties and had different cause numbers, and the Bar does not contend Ms. James was originally involved in the Yazoo County case. The *534 question thus turns on what "a matter" means as contemplated by Rule 1.12.
¶ 23. The Comment to Rule 1.12 begins by noting that "[t]his Rule generally parallels Rule 1.11," which defines "matter." Rule 1.11(d)(1) sets forth that "the term `matter' includes . . . any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties."
Application to the Case at Hand.
¶ 24. Ms. James oversaw the Washington County child abuse petition, not the Yazoo County divorce action. However, the two cases were greatly intertwined. The parties, J.N.W.E. and W.D.W., are the same. The initial pleading filed before Ms. James by J.N.W.E., styled a "Petition for Protection from Domestic Abuse," discusses the evolution of the divorce case in Yazoo County. It further reveals that the Yazoo County Chancery Court had ruled previously on the custody issue between J.N.W.E. and W.D.W., which was the sole subject of the Washington County case. At the second hearing in the Washington County child abuse case, Ms. James acknowledged that information regarding the alleged child abuse "w[as] presented to the Yazoo Chancery Court."
¶ 25. It is also indisputable that any divorce action will include a discussion and ruling by the chancery court on custody of any children to the marriage. Ms. James ruled explicitly on the rights of W.D.W. to have visitation with his child. Custody and visitation are inextricably bound to the divorce action in Yazoo County where Ms. James later attempted to represent J.N.W.E.
¶ 26. While the two cases do not share the same docket number, they do involve the same parties, the same issues, and the same concerns. As a judge, Ms. James personally and substantially participated in the Washington County child abuse action, which was focused exclusively on the visitation of the minor child.
¶ 27. Critically, Ms. James admits she was hired by J.N.W.E. to obtain a modification of the Yazoo County divorce order, specifically a "modification so [J.N.W.E.] could get custody."[3] Custody of the minor child is exactly the matter Ms. James oversaw in the Washington County child abuse case.
¶ 28. Because she substantially participated in the custody matter as a judge, Ms. James cannot now represent J.N.W.E.nor, for that matter, could she represent the father, W.D.W.[4] The only circumstance in which Ms. James could have represented "anyone in connection [in the] matter" is if "all parties to the proceeding give informed consent confirmed in writing." M.R.P.C. 1.12(a). As signaled by his motion to disqualify, W.D.W. expressly did not consent to Ms. James representing his ex-wife, J.N.W.E.
The Discipline Imposed.
¶ 29. "Our primary concern when imposing sanctions for attorney misconduct is that the punishment be sufficient to vindicate the overall reputation of the Bar in the public eye." Goeldner v. *535 Miss. Bar, 891 So.2d 130, 135 (Miss.2004). "While we are free to evaluate the discipline the Bar has imposed and modify that punishment as best needed to serve the best interest of the Bar and the public, we consider a set of nine criteria" in assessing punishment. Id. at 135. They are:
(1) the nature of the conduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the profession;
(4) the protection of the public;
(5) the sanctions imposed in similar cases;
(6) the duty violated;
(7) the lawyer's mental state;
(8) the actual or potential injury caused by the lawyer's misconduct; and
(9) the existence of aggravating or mitigating circumstances.
Id.
¶ 30. Ms. James has violated Rule 1.12, which is designed to preserve the integrity of the legal system from real or potential conflicts of interest. There is a compelling need to deter members of the Bench and Bar from this type of conduct and protect the public from this type of behavior. The Comment to Rule 1.11 is illustrative in this respect, as enforcement of that Rule, as well as Rule 1.12, "prevents a lawyer from exploiting public office for the advantage of a private client." At all times we must protect the public from these types of conflicts of interest.
¶ 31. In terms of mitigation, we may contemplate the previous performance of a lawyer and whether they have any prior infractions. Goeldner, 891 So.2d at 135. Ms. James has been a member of the Mississippi Bar for 29 years, and the record shows that the Bar has never instituted disciplinary proceedings against her before. She has repeatedly testified and argued that she wished to become counsel of record for J.N.W.E. in order to help the minor child, and we cannot impugn that honorable impulse. While we are reluctant to discipline longstanding members of the Bar with no history of infractions, we cannot ignore the conduct that has triggered the case at hand, especially in light of the plain language of Rule 1.12.
¶ 32. The Bar suggested that Ms. James receive a public reprimand as the sole punishment because of her violation of Rule 1.12, which was the punishment assessed against Judge Atkinson for a similar violation. 645 So.2d at 1337. In light of the foregoing, this is not an excessive punishment.

CONCLUSION
¶ 33. In order to protect the integrity of our profession, our Rules of Professional Conduct specifically prohibit attorneys who are former judges from later representing anyone in a matter in which they personally and substantially participated as a judge. Because Ms. James violated this prohibition, she must be publicly reprimanded.
¶ 34. CEOLA JAMES SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE ON THE FIRST DAY OF THE NEXT TERM OF THE WARREN COUNTY CIRCUIT COURT.
COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J. RANDOLPH, J., JOINS IN PART. WALLER, P.J., AND GRAVES, J., NOT PARTICIPATING.
*536 EASLEY, Justice, concurring in part and dissenting in part.
¶ 35. While I concur with the majority that disciplinary action is warranted and sanctions are necessary, I respectfully dissent from the majority's imposition of only a public reprimand. I believe that this Court should impose additional discipline on James. The Bar requested $69.17 for costs and expenses, including costs incurred in the investigation of this action. James claims that she already paid these costs. Notwithstanding James's assertion, the record reflects no documentation or other evidence of this payment. Therefore, I believe that the Bar is entitled to $69.17, or, in the alternative, the Bar should be provided proof of payment of these costs by James.
¶ 36. Additionally, I believe that James's conduct was so egregious that this Court should impose a ninety-day suspension. See M.R.D. 8(b)(iii). As a former judge, James handled a matter involving the same parties. Once she became a practicing lawyer, James chose to represent one of the parties that had appeared before her in her capacity as a judge. The trial court disqualified James and found that her actions involving the same two parties and the same subject matter was a violation of M.R.P.C. 1.12. J.N.W.E. v. W.D.W., 922 So.2d 12, 15 (Miss.Ct.App. 2005), cert. denied, 926 So.2d 922 (Miss. 2006). The Court of Appeals affirmed the trial court and held:
Based on these facts, we find that James' participation in the litigation between the parties, as a chancellor, was substantial, and thus she was properly disqualified under Rule 1.12 of the Rules of Professional Conduct from representing J.N.W.E. in her ongoing battle with W.D.W. over the custody of the parties' minor child. Therefore, we affirm the chancellor's decision disqualifying James as J.N.W.E.'s attorney.
J.N.W.E., 922 So.2d at 16.
¶ 37. James's representation of this party unequivocally violated the Rule of Professional Conduct 1.12. There is no doubt that James, as a former judge and now as an attorney, should have been keenly aware of this conflict. The principle that a lawyer should not represent anyone in a matter in which he or she substantially participated in his or her capacity as a judge is elementary. For the above reasons, I conclude that the Bar is entitled to payment in the amount of $69.17 and, I would impose a ninety-day suspension.
SMITH, C.J., JOINS THIS OPINION. RANDOLPH, J., JOINS THIS OPINION IN PART.
NOTES
[1] The Court of Appeals saw fit to seal the names of the parties because the interests of a child were at stake; we will similarly refrain from identifying them.
[2] Ms. James does not argue that she did not personally participate in the case, so we need not examine that portion of the Rule.
[3] Although the documents are not in the record, Ms. James testified that W.D.W. was ultimately granted custody of the minor child in the Yazoo County divorce action.
[4] A similar conclusion was reached by the Mississippi Bar in Ethics Opinion No. 226, rendered April 6, 1995. There, the Bar concluded "that a former chancellor may not later represent parties in proceedings for contempt or modification of decrees and judgments which were rendered in the case by the former chancellor."