ON WRIT OF CERTIORARI

CARLSON, Presiding Justice,
for the Court:
¶ 1. Matthew Miller was tried and convicted of aggravated assault and forcible rape of his girlfriend’s minor daughter, and he appealed. We assigned this case to the Court of Appeals, and that court affirmed Miller’s convictions and sentences. Having granted Miller’s petition for writ of certiorari, we find reversible error in the trial judge’s failure to recuse himself after having served as the county prosecuting attorney in an earlier youth-court shelter hearing regarding the minor victim’s custody as a result of the events giving rise to the criminal charges which are the subject of today’s appeal. Thus, we are constrained to reverse the judgment of the Court of Appeals which affirmed Miller’s convictions and sentences, as well as the trial court’s judgment, and we remand this case to the Circuit Court for the Second Judicial District of Hinds County for a new trial.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. Because of the disposition of today’s case, we need not discuss in detail the sordid facts leading up to Miller’s indictment for the crimes of aggravated assault and forcible rape. A more detailed version of the facts may be found in the opinion of the Court of Appeals. Miller v. State, 94 So.3d 1155, 1158-59, ¶¶2-9, (Miss.Ct.App.2011), reh’g denied (Mar. 13, 2012).
¶ 3. Succinctly stated, Abby,[1] the minor daughter of Miller’s girlfriend, Melissa,[2] *1122 had her sixteenth birthday on January 21, 2008, less than a week prior to the events which are the subject of today’s appeal. On Sunday evening, January 27, 2008, Miller and Abby were alone at Melissa’s home. Miller had been living in the home for about eight years, and he had been Melissa’s boyfriend since Abby was around four years of age. According to Abby, she regarded Miller as her stepfather and they had a father-daughter relationship. That night, Miller asked Abby to help him capture a horse that had gotten away, and Abby agreed. Abby knew that Miller kept horses, and did not consider the request to be odd. According to Abby, later that evening, under the pretense of looking for the escaped horse in rural Hinds County, Miller beat her and forcibly raped her. Suffice it to state here that the legally sufficient evidence presented at trial supported the jury’s verdicts finding Miller guilty of the crimes of aggravated assault and forcible rape of Abby. At trial, Miller’s theory of the case was that Abby falsely accused him of rape to get back at her mother, who would not let Abby have boys over to see her. In his testimony, Miller claimed that he and Abby had consensual sex. But he denied ever striking Abby. Instead, Miller contended that Abby had propositioned him and had been injured when she suddenly leapt from his vehicle.
¶ 4. Before trial, Judge Malcolm 0. Harrison denied Miller’s ore tenus motion for Judge Harrison to recuse himself. The basis of the recusal motion was that Judge Harrison had served as youth-court prosecutor at the shelter hearing concerning Abby’s custody. This shelter hearing was held as a result of the criminal acts described supra. Judge Harrison determined that, since the youth-court matter was civil, not criminal; since Miller was not a party to that case; and since the youth court considers only the best interest of the child, recusal was not required in Miller’s criminal trial concerning the felony charges which had brought about the youth-court shelter hearing.
¶ 5. Judge Harrison presided over Miller’s criminal trial, and the jury found Miller guilty of aggravated assault and forcible rape. Thereafter, Judge Harrison sentenced Miller to twenty years in the custody of the Mississippi Department of Corrections for the aggravated-assault conviction, and to thirty years in the custody of the Mississippi Department of Corrections for the forcible-rape conviction, with the sentences to be served consecutively. Once Miller appealed, we assigned this case to the Court of Appeals, which affirmed Miller’s convictions and sentences. Miller, 94 So.3d at 1173, ¶ 67. After the motion for rehearing was denied by the Court of Appeals, Miller filed his petition for writ of certiorari, which we granted.
DISCUSSION
¶ 6. In his petition for writ of cer-tiorari, Miller raises the sole issue of whether Judge Harrison abused his discretion by failing to recuse himself. Miller had made an ore tenus motion for Judge Harrison’s recusal four days before trial,[3] noting that, before his appointment to the circuit court by Governor Barbour, Judge Harrison had served as Hinds County prosecuting attorney. In that capacity, Judge Harrison had appeared as a youth-court prosecutor in the shelter hearing in which Abby was removed from her mother’s care (the mother, Melissa, was still *1123 living with Miller). As a result, Miller argues that Judge Harrison was disqualified from serving as judge at Miller’s trial.
¶ 7. “No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties.” Miss. Const, art. 6, § 165. Furthermore, Mississippi Code of Judicial Conduct 3(E) states in relevant part that:
(1) Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]
Mississippi Code of Judicial Conduct Canon 3(E); Miss.Code Ann. § 9-1-11 (Rev.2002). “When the conduct of a judge is being examined according to the dictates of a canon of the Code of Judicial Conduct, ‘the Canon enjoys the status of law such that we enforce it rigorously, notwithstanding the lack of a litigant’s specific demand.’ ” Jenkins v. State, 570 So.2d 1191, 1192 (Miss.1990) (quoting Collins v. Dixie Transport, Inc., 543 So.2d 160, 166 (Miss.1989)). This Court has defined a “matter” broadly — it includes “any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties.” James v. Mississippi Bar, 962 So.2d 528, 534 (Miss.2007).
¶ 8. “A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.” Jenkins, 570 So.2d at 1192 (citing Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986)). “Where one actively engages in any way in the prosecution and conviction of one accused of a crime, he is disqualified from sitting as a judge in any matter which involves that conviction.” Banana v. State, 638 So.2d 1329, 1330 (Miss.1994) (citing Moore v. State, 573 So.2d 688, 689 (Miss.1990) (citation omitted)). However, “[w]hen a judge is not disqualified under the constitutional or statutory provisions[,] the decision is left up to each individual judge and is subject to review only in a case of manifest abuse of discretion.” Tubwell v. Grant, 760 So.2d 687, 689 (Miss.2000) (citations omitted).
¶ 9. The Court of Appeals found that, since the youth-court hearing was a civil matter and Miller was not a party to it, Judge Harrison’s participation as a county prosecutor did not amount to active participation in Miller’s criminal prosecution. Miller, 94 So.3d 1160-61, ¶¶ 15-21. The Court of Appeals largely relied on Jenkins, 570 So.2d at 1192, and Banana, 638 So.2d at 1330, in which trial judges who had been prosecutors at the time of the indictment of the defendants at issue were disqualified due to their participation in the matter. The Court of Appeals distinguished those cases, since Judge Harrison was the county prosecutor, not an official of the district attorney’s office, and Miller was not a party to the youth-court hearing. Miller, 94 So.3d 1160-61, ¶¶ 18-20. The Court of Appeals found that Judge Harri *1124 son did not serve as a lawyer in the matter in controversy under the meaning of the Code of Judicial Conduct. Id. at 1161, ¶ 20.
¶ 10. We respectfully disagree with the Court of Appeals majority. This Court has defined “matter” broadly, and Judge Harrison, as county prosecutor, participated in the youth-court shelter hearing involving the same abuse, victim, and perpetrator at issue in the subject criminal trial, to the extent that he signed an order finding jurisdiction and removing the child.
¶ 11. Both the Court of Appeals majority and the dissent by Judge Carlton considered the duties of the youth court at a shelter hearing, in determining whether Abby’s shelter hearing constituted the same “matter” as the criminal trial of Miller. Miller, 94 So.3d at 1160, ¶¶ 15-17; 1170-72, ¶¶ 61-66 (Carlton, J., dissenting, joined by Irving, P.J.). We do the same here, and we quote here from Judge Carlton’s dissent, with which we agree:
Judges should recuse themselves in proceedings when impartiality might reasonably be questioned and also when necessary to avoid the appearance of impropriety. The exhibits introduced at the shelter hearing reflect that the current trial judge had previously served as a youth court prosecutor in the matter in controversy. The signed order from the shelter hearing shows various factual determinations made by the youth court based upon the petition filed and the evidence presented as to whether the abuse occurred as well as regarding who had perpetrated the offenses against the child. The trial judge’s error cannot be dismissed solely because the matter involved different cause numbers. Disqualifying prior participation occurs even in different cases if the underlying substantive matters in controversy were the same and involved the same parties. Disqualification due to participation in the same “matter” includes matters like other proceedings, investigations, and claims. It does not require the participation to be in the same case or cause number. See generally M.R.P.C. 1.12,1.18 cmts.
The shelter-hearing order in the record bears the current trial judge’s name as the prosecuting attorney at the shelter hearing. In that order, the youth court adjudicated that: the youth court possessed subject matter jurisdiction; the child was an abused child; and the child’s removal and placement of the child with a relative. The shelter order also contains a no-contact order against Miller pertaining to the child victim in this case, and the order shows that the youth court ordered the Department of Human Services to continue its investigation. The shelter-hearing exhibits in the record also include an invoice billed to the trial judge in this appeal in his capacity as the youth court prosecutor for the child’s medical records in the amount of $65.27; Miller’s Miranda waiver and consent form; and an affidavit from an individual that conducted an educational and intelligence test on Miller explaining the results.
Miller, 94 So.3d at 1170, ¶¶ 60-61 (Carlton, J., dissenting). The above quotation from Judge Carlton’s dissent excludes three footnotes in which Judge Carlton relied on Haralson v. Haralson, 483 So.2d 378 (Miss.1986); J.N.W.E v. W.D.W., 922 So.2d 12 (Miss.Ct.App.2005); and James, 962 So.2d at 534. Judge Carlton also explained that the invoice billed to Judge Harrison ultimately was paid by the district attorney’s office.
¶ 12. Judge Carlton also pointed out that youth court “[proceedings commence when a report or complaint of a child within the jurisdiction of the youth court requires an action by the youth court or *1125 by the chancery court or by a referee appointed pursuant to section 48-21-111 of the Mississippi Code or by a designee appointed pursuant to the Mississippi Youth Court Law when acting in a judicial capacity.” Uniform Rule of Youth Court Practice 2(b). “Rule 8(c) is to assure, consistent with Rule 2 of these rules, that chancery court procedures for investigating charges of abuse or neglect are consistent with those applicable to youth court.... Upon the intake officer recommending that a petition be filed, and the court ordering that a petition be filed, the prosecutor must file the petition or request the court to dismiss the proceedings or to handle the cause informally.” Uniform Rule of Youth Court Practice 8(c), cmt. See also Uniform Rule of Youth Court Practice 8(b) (child-protection proceedings); Uniform Rule of Youth Court Practice 8(c) (chancery court proceedings); Uniform Rule of Youth Court Practice 8, cmt. The youth-court prosecutor prepares the petition and filings, unless someone else is designated to do so, and the issues therein must be adjudicated by the youth court. See Uniform Rule of Youth Court Practice 20. See also Uniform Rule of Youth Court Practice 14(b) (entry of appearance); Uniform Rule of Youth Court Practice 24(b)(4)-(5) (The court, at the adjudicatory hearing, verifies information, explains the parties’ rights, and requires an adjudication involving questions of fact and jurisdiction); Uniform Rule of Youth Court Practice 25(b) (providing the requirements for the content of the adjudication order). Mississippi statutes and the Uniform Rules of Youth Court Practice also required the youth court at a shelter hearing to consider additional matters of its jurisdiction, necessitating in this case a factual determination of whether Miller served as a caregiver, and the youth court also possessed the additional consideration of whether removal served the child’s best interest. Miller, 94 So.3d at 1171, ¶¶ 63-64 (Carlton, J., dissenting)
¶ 13. The trial judge in today’s case erred in concluding that the youth court considers only the best interest of the child. Mississippi statutes require youth courts to make various factual adjudications in child-protection proceedings, and the matters before the youth court in a shelter hearing for child protection concerns much more than just the issue of the child’s best interest. First and foremost, the youth court must find jurisdiction to exist, and jurisdiction existed in this ease upon the determination of the child as an abused child in accordance with Mississippi Code Section 43-21-105(m) (Supp.2011), which defines abused child as follows:
“Abused child” means a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused upon the child sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury[,] or other maltreatment. However, physical discipline, including spanking, performed on a child by a parent, guardian!,] or custodian in a reasonable manner shall not be deemed abuse under this section.
Therefore, the very first issue the youth court was required to address in the shelter hearing went to the heart of the substantive issue of Miller’s guilt. Since he was a nonfamily member, for youth-court jurisdiction to exist over the child as an “abused child,” the court had to determine if Miller had been responsible for her care at any time and whether he had abused her.
¶ 14. After the court determined that the child fell within the court’s jurisdiction as an abused child at the hands of someone responsible for her care, then the youth *1126 court had to address whether it was in the child’s best interest to place her in foster care. Rule 16 of the Uniform Rules of Youth Court Practice specifies the various determinations required in child-protection shelter proceedings in order to take children into custody. Shelter hearings determine: probable cause the child is within the jurisdiction of the court; probable cause that custody is necessary; whether the effect of the child continuing to reside within the child’s own home would be contrary to the welfare of the child; whether placement of the child in foster care is in the best interest of the child; and whether reasonable efforts to maintain the child in her own home fail to apply. See Uniform Rule of Youth Court Practice 16(b)(4).
¶ 15. We agree with Judge Carlton’s dissent that the shelter hearing involved “the same victim, the same abuse and offenses, and the same perpetrator” as prosecuted in the case before the circuit court. Miller, 94 So.3d at 1124-25, ¶ 68 (Carlton, J., dissenting). Today’s appeal involves the same matter in controversy in which Judge Harrison served as a lawyer. Furthermore, Judge Harrison may also have personal knowledge of disputed evidentia-ry facts concerning the proceeding, due to his participation in the youth-court shelter hearing addressing the same facts. As a result, we find that Judge Harrison has manifestly abused his discretion by failing to recuse himself. Clearly, by serving as the presiding judge in the circuit-court criminal trial involving the same victim, the same offenses and the same perpetrator as in the youth-court proceedings in which he served as the prosecutor, the trial judge in today’s case placed himself in a situation in which his impartiality might be questioned by a reasonable person knowing all the circumstances. Miss. Code of Judicial Conduct Canon 8E(1).
CONCLUSION
¶ 16. For the reasons discussed, the Court of Appeals’ judgment affirming the circuit court’s judgment of conviction for aggravated assault and forcible rape and the respective sentences of twenty years and thirty years to be served consecutively in the custody of the Mississippi Department of Corrections is reversed, as is the trial court’s judgment, and this case is remanded to the Circuit Court for the Second Judicial District of Hinds County for a new trial consistent with this opinion.
¶ 17. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. We use a pseudonym, Abby, to protect the identity of the minor victim. The Court of Appeals likewise referred to the minor victim as Abby.

. Melissa also is a pseudonym.

. From the record, there appears to be no dispute over the fact that defense counsel first learned through supplemental discovery provided on the day the ore tenus motion for recusal was made that Judge Harrison had been involved in the previous shelter hearing concerning Abby.